***********
The undersigned have reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Pfeiffer. The appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 11 March 2002 as:
 STIPULATIONS
1. The parties have been correctly designated.
2. An employment relationship existed between plaintiff and defendant from approximately 1992 through approximately February 1998. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act during this period of time.
3. Defendant was self-insured for workers' compensation purposes on the date of the injury giving rise to this claim.
4. Plaintiff suffered a hernia on or about 30 August 1996 while working for defendant. This hernia was found compensable by Deputy Commissioner Wanda Blanche Taylor in an Opinion and Award filed 30 June 2000. A hearing was held in that matter before Deputy Commissioner Taylor on 28 April 1999.
5. At the time of the 1996 hernia, plaintiff was earning an average weekly wage of $526.28, as found by Deputy Commissioner Taylor.
6. Plaintiff had previously suffered a work-related hernia on or about 15 May 1995 while in the employ of defendant. That claim, which was the subject of I.C. No. 551388, was accepted as compensable by virtue of a Form 21 agreement that was approved by the Industrial Commission on 11 January 1996, and plaintiff received benefits based upon an average weekly wage of $695.59. Deputy Commissioner Taylor's 30 June 2000 Opinion and Award did not address the issue of whether the 1996 hernia was a natural and direct result of the 1995 hernia.
7. The Full Commission takes judicial notice of the Industrial Commission forms, orders, and awards pertaining to the prior compensable hernias that were the subjects of I.C. Nos. 551388 and 809528. In addition to Dr. Garrett's deposition transcript, the parties stipulated into evidence in this matter a packet consisting of plaintiff's medical records (stipulated exhibit 1). Plaintiff introduced and Deputy Commissioner Pfeiffer admitted into evidence in this matter plaintiff's exhibit 1, which consists of wage and employment information pertaining to plaintiff. Defendant introduced and Deputy Commissioner Pfeiffer admitted into evidence defendant's exhibit 1, which consists of discovery responses.
8. The issues to be determined as a result of this hearing are whether three subsequent hernias suffered by plaintiff after the 30 August 1996 hernia are compensable as being a direct and natural consequence of one or both of the previous compensable hernias. Defendant has denied compensability for these subsequent hernias. Plaintiff seeks indemnity and medical compensation for these three subsequent hernias.
9. The 30 June 2000 Opinion and Award filed by Deputy Commissioner Taylor is incorporated by reference as though fully set forth herein.
 ***********
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission makes the following additional
 FINDINGS OF FACT
1. On the date of the Deputy Commissioner hearing in the matter, plaintiff was 53 years old. Plaintiff has a G.E.D. and has taken a trucking course. Plaintiff became employed by defendant in 1992 and remained in its employ through February 1998. Prior to his employment with defendant, he had not had any hernias. As of the date of the hearing in the matter, plaintiff was employed as a truck driver for a company in Virginia.
2. After leaving defendant's employ in early 1998, plaintiff was next employed by DMR Builders, which was a partnership with his cousin in the business of building houses. Plaintiff worked in this capacity from May 1998 through November 1999.
3. Plaintiff next worked for three months in Virginia building and packing telephones on an assembly line, then for five and a half months loading and driving trucks for a temporary agency in Virginia. Plaintiff received unemployment benefits at $224.00 per week from 21 January 2001 through 19 May 2001, excluding the period 25 February 2001 through 31 March 2001.
4. After sustaining his first umbilical hernia in 1995, which was accepted as compensable, plaintiff sustained a second hernia, also found to be compensable, in August 1996. This second hernia was medically characterized as a recurrent ventral (front) incisional hernia. Both of these hernias required surgical repair. Following both surgical repairs, plaintiff no longer had a hernia and plaintiff was released to return to work with no restrictions. While plaintiff's recovery from his second surgery in February 1998 was slow, he ultimately did heal from that surgery. Plaintiff did not work for defendant after his February 1998 surgery but instead went into the homebuilding business with his cousin.
5. In the summer of 1999, when he was no longer employed by defendant, plaintiff had a recurrence of his hernia. There is no known specific incident giving rise to his recurrence, and plaintiff continued working with his cousin. Plaintiff then sought treatment from Dr. Garrett, who performed a ventral herniorrhaphy on 20 December 1999. During this surgery, Dr. Garrett ascertained that the hernia, which he characterized as a recurrent ventral incisional hernia, was in the same area as plaintiff's two previous hernias. After the surgery, plaintiff returned for a follow-up appointment on 17 January 2000, and it was determined that plaintiff had done well with the surgery and no longer had a hernia. Dr. Garrett released plaintiff to return to work with no restrictions as of 12 February 2000.
6. In the summer of 2000 plaintiff was on holiday, and while standing in the ocean, he was struck by a wave and immediately felt a burning in his stomach. Thereafter, plaintiff continued working until such time as he was laid off and began collecting unemployment benefits as found above. Plaintiff returned to Dr. Garrett on 30 January 2001 complaining of a repeat hernia. Dr. Garrett performed another ventral herniorrhaphy on 28 February 2001, this time with a nonabsorbable mesh. Dr. Garrett again noted that the hernia was in the same area as plaintiff's previous hernias. Upon plaintiff's follow-up examination on 19 March 2001, Dr. Garrett felt that plaintiff was doing well and no longer had a hernia. Plaintiff's healing process was slightly complicated by an infection at the incision site, but nevertheless, he was released to return to work with no restrictions as of 12 April 2001.
7. In the summer of 2001, plaintiff was lifting and carrying a door at his home when he felt the symptoms of a hernia again develop.
8. Plaintiff filed a Form 18M dated 3 August 2001 seeking additional medical treatment for alleged recurrent hernias. Defendant has denied liability for these recurrent hernias, arguing that plaintiff's previous hernias had been surgically repaired, and because he was no longer working for defendant, the repeat hernias could not have been caused by plaintiff's employment. The Industrial Commission's Executive Secretary filed an order on 11 October 2001 denying plaintiff's Form 18M for additional medical treatment, and indicating that plaintiff may request a hearing in the matter. This matter thereupon was placed on the active hearing docket.
9. Plaintiff was seen again by Dr. Garrett on 7 March 2002, this time with two recurrent hernias, both in the same area as his former hernias, with one on the left and one on the right of his midline. Dr. Garrett has now recommended that plaintiff undergo one of two procedures: either a laparoscopic approach or what he calls an "Israeli repair."
10. Dr. Garrett testified, and Dr. Harris and Dr. Hill agreed, that when a person suffers an initial hernia, he or she is predisposed to having another, recurrent hernia. By definition, a recurrent hernia requires that a person sustain a hernia in the same area as a prior hernia. All of the hernias sustained by plaintiff after the initial umbilical hernia in May 1995 have been in the same area as the initial hernia. Dr. Garrett opined that there is a slightly greater than 50 percent chance that all of plaintiff's subsequent recurrent hernias in the same area have been due, in part, to the previous hernia(s) and the resulting surgical repair(s) that have weakened the tissue. Dr. Garrett testified, however that "[a] hernia is not going to simply recur just by nature of the fact that he had a previous hernia repair." The greater weight of the competent evidence is that the existence of a prior hernia may predispose the patient to have a subsequent hernia, however, some other activity, whether coughing, lifting, or some other strain would have to occur to cause the subsequent hernia. Absent some new strain, the hernias were repaired subsequent to the surgery and did not continue after that surgery. The subsequent hernias are new injuries and are not a continuation of the same hernia. Therefore, the Commission finds that the 1996 hernia ended with the recovery from the successful surgery and plaintiff's subsequent hernias are not the direct and natural result of the prior injury or injuries.
11. The greater weight of the competent evidence establishes that plaintiff sustained a compensable hernia in 1995 that was successfully repaired and he was permitted to return to work without restriction. Also, plaintiff sustained a subsequent, recurrent hernia in 1996 that was successfully repaired in 1998, which did not exist after the repair, and plaintiff was permitted to return to work without restriction. As previously found by the Commission in this case, the 1996 hernia was a new injury, and not a continuation of his 1995 injury.
 ***********
The foregoing stipulations and findings of fact result in the following additional
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable umbilical hernia on May 15, 1995. N.C. Gen. Stat. § 97-2(18). This hernia was surgically repaired, and thereby did not exist after plaintiff recovered from the surgery.
2. In 1996, plaintiff sustained a compensable recurrent ventral incisional hernia in the same area as his prior compensable 1995 hernia.Ambrose v. Tidewater, COA02-383, 578 S.E.2d 709 (2003) (unpublished opinion); Ballance v. White's Tire Service, I.C. No. 415871 (1998); N.C. Gen. Stat. § 97-2(18). This hernia was surgically repaired, and thereby did not exist after plaintiff recovered from the surgery. SeeAmbrose, supra; Ballance, supra. The surgery was successful, plaintiff was released to work without restrictions, and has not established that he sustained disability. N.C. Gen Stat. § 97-29 et seq. Plaintiff's 1995 and 1996 hernias had resolved and plaintiff did not have a hernia prior to his injuries in 1999, 2000, and 2001. See Ambrose, supra. The hernia no longer exists after a successful repair. Ballance, supra.
3. Plaintiff has since suffered at least three recurrent ventral incisional hernias in the same area as his initial umbilical hernia: in 1999, 2000, and again in 2001. These hernias did not recur just by nature of the fact that plaintiff had previous hernia repair surgeries. These hernias are new injuries. See Ambrose, supra; Ballance, supra; N.C. Gen. Stat. § 97-2(18). Consequently, these injuries are not the direct and natural consequence of the 1995 or 1996 hernias.
 ***********
The foregoing findings of fact and conclusions of law result in the following
 AWARD
1. Plaintiff's claim for additional benefits for the 1996 hernia is DENIED.
2. The parties shall pay their respective costs.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER